ADELAIDE A. FORD *vs.* KYLE L. FLAHERTY; YANKEE DODGE, INC. & another, THIRD-PARTY DEFENDANTS.

Suffolk.    November 14, 1972. — December 29, 1972.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Negligence,* Motor vehicle, Dealer, Manufacturer. *Sale,* Warranty. *Motor Vehicle,* Defect.

In an action against a dealer by the purchaser of a new automobile which was driven only by him or his wife and only for a moderate distance and without any accident from the date of purchase until forty-one days later when, as the plaintiff depressed the brake pedal in order to make a left hand turn, the automobile swerved violently to the left and struck a pedestrian, evidence that the defendant had failed to inspect the automobile's brake cylinders prior to delivery as advised by the manufacturer, that the plaintiff complained that the automobile pulled to the left and after a road test the defendant said it was "all right," and expert testimony that the brake cylinder in the left

---

front wheel was defective prior to the accident warranted a finding of negligence on the part of the defendant. [18-20]

A finding of negligence of a manufacturer of a new automobile which passed through the possession or control of both a subsidiary of the manufacturer and "the [motor] carrier" for the dealer from whom the automobile was purchased by the plaintiff, who was operating it when it was involved in an accident caused by a defective brake cylinder, was not warranted where there was no evidence that the automobile was defective at the time the manufacturer surrendered possession of it and that it had not been improperly handled by some intermediary prior to its delivery to the plaintiff. [21]

Absence of privity of contract between a purchaser of an automobile from a dealer in 1964 and the manufacturer of the automobile barred the purchaser's recovery from the manufacturer for alleged breach of warranty with respect to a brake cylinder. [21-22]

CONTRACT AND TORT. Writ in the Superior Court dated December 9, 1964.

The action was tried before *Vallely,* J.

*David W. Kelley* for Kyle L. Flaherty.

*Thomas D. Burns* for Yankee Dodge, Inc.

*Robert W. Cornell* (*John B. Johnson* with him) for Chrysler Corporation.

GRANT, J. On the clear, dry day of August 18, 1964, Kyle L. Flaherty was operating his motor vehicle at a reasonable rate of speed in a westerly direction along Columbia Road in the Dorchester district of Boston, intending to make a left hand turn into an access ramp leading to the Southeast Expressway. He depressed the brake pedal in order to slow the vehicle preparatory to making the intended turn. The vehicle swerved violently to the left, some ten or fifteen degrees further to the left than Flaherty had intended, and, while temporarily out of his control despite his use of power steering, crossed Columbia Road, climbed over a curb, struck a pedestrian, and came to rest against a concrete pole.

The pedestrian commenced an action against Flaherty to recover for her personal injuries.[1] Flaherty, whom we shall

---

[1] By the time the case went to the jury only one count of the pedestrian's original declaration remained. That alleged negligent operation of the Flaherty vehicle. We have before us no question touching the verdict for the pedestrian.

hereinafter refer to as the plaintiff, impleaded Yankee Dodge, Inc. (Yankee), the dealer from which the vehicle had been purchased, and Chrysler Corporation (Chrysler), which had manufactured the vehicle. Neither Yankee nor Chrysler sought to proceed against the other. (G. L. c. 231, § 4B, as inserted by St. 1964, c. 696.) Each count of the plaintiff's declaration was limited to a claim for indemnity against possible liability to the pedestrian.[2] By agreement of all parties the jury was instructed that any verdict which it might return for the plaintiff against either Yankee or Chrysler should be in the same amount as any verdict which it might return for the pedestrian against the plaintiff. The jury returned a verdict for the pedestrian, and we must now determine the propriety of the actions of the trial judge in directing or entering verdicts for Yankee and Chrysler on the various counts of the plaintiff's declaration which were addressed to them.

1. Count 4 of the declaration alleged that Yankee negligently failed properly to inspect the purchased vehicle prior to delivery to the plaintiff or inspected it in a negligent manner and was negligent in failing to warn the plaintiff of a dangerous and defective condition in the vehicle which should have been known to Yankee.[3] A verdict for the plaintiff on this count was taken under leave reserved, and the court, subject to the plaintiff's exception, subsequently set the verdict aside and ordered the entry of a verdict for Yankee. There follows a summmary of the evidence most favorable to the plaintiff on this count. *Petrangelo* v. *Pollard,* 356 Mass. 696, 697.

The vehicle in question had been manufactured by Chrysler and was received by Yankee with a complete

---

[2] The plaintiff's individual claims for bodily injury and property damage were disposed of by agreement.

[3] This and the other counts against Yankee actually allege that the vehicle was purchased by the plaintiff's wife, that the wrongful action of Yankee was directed to her, and that she had authorized the plaintiff to use the vehicle at the time of the accident. There was conflicting evidence as to which, the plaintiff, his wife, or both, had purchased the vehicle. As Yankee makes nothing of this point, we shall proceed on the basis that the plaintiff made the purchase.

written checklist furnished by Chrysler which listed the various things to be done by Yankee prior to the vehicle's delivery to a customer. According to that list, pre-delivery servicing was to include taking the front wheels off the vehicle and inspecting the insides of those wheels, including the hydraulic brake cylinders. There was expert testimony from one Ellis, service manager of Yankee at all material times, that it was important that the whole hydraulic brake system be tight so that the brake fluid in the component parts of the system, including the individual brake cylinders, be kept inside the system and not allowed to escape. No inspection of the brake cylinders of the particular vehicle was made by Yankee prior to delivery to the plaintiff, who purchased the vehicle on July 8, 1964.

About ten days or two weeks after the purchase of the vehicle the plaintiff's wife noticed that the vehicle pulled to the left when she started to slow down at an intersection. The plaintiff returned the vehicle to Yankee around August 1, 1964, and told Ellis that his wife was having trouble with the brakes and that when she had stepped on them to stop at an intersection she had experienced some pulling to the left. Just what, if anything, was done by Yankee to the vehicle on the occasion of this complaint does not appear. When the plaintiff got the vehicle back Ellis said that it had been road tested and was "all right."

Ellis testified, however, that when customers came in with complaints similar to the foregoing he had found on taking a wheel apart that brake fluid had escaped from the brake cylinder or its components and had gotten onto the lining of a brake shoe, in which event the shoe should be replaced and the leaking brake cylinder or its components rebuilt or replaced. The "normal recommended procedure . . . if it was a brake pull . . . would [be to] look for contamination on the linings." (See *Carney* v. *Bereault*, 348 Mass. 502, at 510.) This testimony was corroborated in its essentials by one Wentworth, also called by the plaintiff as an expert, who added that on the occasion of similar complaints he had been able to determine the specific cause of the leak in the brake cylinder.

No one except the plaintiff or his wife drove the vehicle between the time of its purchase and the time of the accident in question, forty-one days later. It had not been involved in another accident or struck anything. No servicing had been performed or repairs made at any place other than Yankee. The vehicle had been driven less than two thousand miles. There was testimony by both experts from which the jury could have inferred that the vehicle had been caused to veer to the left and strike the pedestrian by reason of the excessive braking action of the brake system in the left front wheel and that such action had been caused by an accumulation of contamination on the brake shoes in that wheel consisting of brake fluid which had leaked from a brake cylinder which was defective prior to the accident, had found its way onto the shoes and had been baked onto them by the heat of friction over a period of time.[4]

There is more here, we think, than what appeared under the negligence count against the dealer in the case of *Necktas* v. *General Motors Corp.,* 357 Mass. 546, 549. We are of opinion that the instant case is controlled in principle and result by that of *Kennedy* v. *U-Haul Co., Inc.,* 360 Mass. 71, 74 (see also *Mitchell v. Lonergan,* 285 Mass. 266) and that it was error to deprive the plaintiff of the jury verdict in his favor on the negligence claim against Yankee. The exception to that action is sustained, and judgment for the plaintiff is now to be entered against Yankee on count 4 of the declaration. G. L. c. 231, § 124. G. L. c. 211A, §§ 5 and 10, as inserted by St. 1972, c. 740, § 1.[5]

2. The trial court directed a verdict for Yankee on count 7 of the declaration, which alleged breaches of implied warranties of merchantability and of fitness for a particular purpose. As judgment will be entered for the plaintiff

---

[4] The actual brake shoes in question were introduced in evidence and are before us. They show discolorations of the sort which the experts described as characteristic of baked on brake fluid.

[5] The plaintiff's brief does not discuss the judge's action in directing a verdict for Yankee on count 6, and we consider the exception related to that count as waived. See Rule 1:13 of the Appeals Court and Rule 1:13 of the Supreme Judicial Court.

against Yankee on count 4, and as there would be no possibility of any additional recovery by the plaintiff against Yankee if the case were to be retried on count 7, it is unnecessary to consider whether there was error with respect to that count. (See, however, *Necktas* v. *General Motors Corp.,* 357 Mass. 546, at 549 [point (c)].) We treat this exception as waived.

3. Count 8 alleged negligent manufacture by Chrysler and negligence in connection with inspection or a failure to inspect. A verdict for the plaintiff on this count was taken under leave reserved but, subject to the plaintiff's exception, subsequently set aside. There was no evidence of the actual condition of the vehicle at the undisclosed time it left the possession of Chrysler, no evidence that Chrysler itself delivered the vehicle directly to Yankee, and no evidence of the condition of the vehicle at the undisclosed time of its receipt by Yankee. There was evidence from which it could have been found that after leaving the possession of Chrysler the vehicle had passed through the possession or control of both Chrysler Motors Corporation[6] and "the [motor] carrier for Yankee." Under these circumstances it was incumbent on the plaintiff to prove that the vehicle was defective at the time Chrysler surrendered possession of it and had not been improperly handled by some intermediary prior to delivery to him. *Evangelio* v. *Metropolitan Bottling Co. Inc.* 339 Mass. 177, 183. Cf. *Leblanc* v. *Ford Motor Co.* 346 Mass. 225, 230-231. As there was a failure of proof on this point the plaintiff's exception with respect to count 8 must be overruled.[7]

4. Count 10 alleged breaches by Chrysler of implied warranties of merchantability and of fitness for a particular purpose. The plaintiff's exception to the direction of a verdict for Chrysler on this count must be overruled for the reason that there was no privity of contract between the

---

[6] A subsidiary of Chrysler also impleaded by the plaintiff but no longer involved in the proceedings.

[7] The plaintiff has not argued his exception to the direction of a verdict for Chrysler on count 9, and we consider that exception as also waived.

plaintiff and Chrysler. *Necktas* v. *General Motors Corp.*
357 Mass. 546, 549 (point [b] ).[8]

5. Our disposition of this case excuses us from consid-
ering the other exceptions argued by the plaintiff.

The exceptions with respect to counts 8 and 10 are
overruled. The exception with respect to count 4 is sus-
tained, and judgment is to be entered against Yankee on
that count on the verdict for the third party plaintiff Kyle
L. Flaherty which was returned by the jury.

*So ordered.*

---

[8] See now G. L. c. 106, § 2-318, as amended by St. 1971, c. 670, § 1.